# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ABDEL MAGEED FADL,<br><br>　　　　Defendant. | No. CR 05-0074<br><br>**REPORT AND RECOMMENDATION** |

_____

This matter comes before the court pursuant to the defendant's renewed and supplemented motion to withdraw his guilty plea (docket number 44). On July 13, 2006, this court filed a report and recommendation recommending that the defendant's June 21, 2006, motion to withdraw guilty plea (docket number 33) be denied.

Upon the withdrawal of Attorney Michael Mollman, Attorney Rick Sole was appointed to represent the defendant. Mr. Sole filed the instant motion to withdraw the guilty plea. The court held an evidentiary hearing on the instant motion on August 2, 2006, at which the defendant was present and represented by Rick Sole. The government was represented by The government was represented by Assistant United States Attorney Ian Thornhill. It is recommended that the defendant's second motion to withdraw his guilty plea be denied.

The defendant's allegations and testimony are, for the most part, very vague. He makes many allegations concerning false statements made to him and in documents presented to the court but he is very short on specific information to back up these allegations. Frankly, it appears to the court that the defendant hopes by repeating these mantras many times, they will somehow be taken as true.

1

According to the defendant, he was rushed into signing a plea agreement and forced to enter his guilty plea on October 3, 2005. However, the evidence at the August 2, 2006, hearing shows that the guilty plea was the product of negotiation in which the defendant was an active participant. The initial draft plea agreement was changed at the defendant's request after the defendant discussed the matters with his attorney.

The defendant states that he had so many questions for his attorney that went unanswered or were incorrectly answered by his attorney on the day he entered his guilty plea. Again, the defendant is very short on specifics but he claims that Mr. Mollman essentially told him to ignore the sentencing guideline calculations contained in the plea agreement. The defendant contends that Mr. Mollman told him that the guideline points were not "Constitutional" and that they were just background information that would not be relied upon at the time of sentencing. However, at the guilty plea proceeding, this court specifically addressed the sentencing guideline stipulation and told the defendant that the calculation would be used to determine his sentence and that, while neither he nor the government could deviate from that stipulation, the stipulation was not binding on the court. The defendant was told about the statutory maximum punishment and mandatory minimum punishment. He was further told that it was ultimately up to the judge to determine his sentence and that it could be different than what his attorney predicted.

The defendant next contends that he pleaded guilty because he was told that he had no chance of prevailing at trial. According to the defendant, his lawyer told him that the judge would take a position protective of the city in an effort to be looked upon favorably and to secure future promotions. The defendant contends that he was intimidated and fearful of asking any questions. Specifically, he claims that Mr. Mollman told him not to ask any questions for fear of losing the benefit of the plea agreement.[1] The defendant

---

[1] The defendant admits that the benefit of the plea agreement was to cap his exposure to incarceration at 30 years.

further contends that Mr. Mollman told him that half of the forces of Cedar Rapids were working against him at this point. These allegations are frivolous.

It is important to note that the defendant does not contend that he was afraid of or intimidated by the undersigned when his plea was taken. This court encouraged the defendant to ask questions of the court and counsel.

The defendant further contends that his lack of understanding is due, in part, to his nationality and inexperience with the English language. This defendant received a five-year architecture degree from a Saudi Arabia university and has been speaking English for the past 25 years. He has been in the United States for the past five years or so. His statements and testimony at hearings demonstrate that he is intelligent, articulate, and has never had difficulty understanding the language used in court.

This defendant has his own interpretation of the interstate commerce requirement needed to demonstrate his guilt. Not surprisingly, the government cannot meet the burden that the defendant insists exists. He has several times referred to factual allegations that dramatically reduce his culpability in his own mind. For example, while the defendant admits taking pictures of nude minor boys, he repeatedly states that (1) he did not encourage the boys to participate in this event, (2) he simply took photographs after similar photographs had already been taken, (3) one boy was older than the government alleged (but still a minor), and (4) he later deleted the pictures from his computer hard drive. At an earlier hearing, the defendant suggested that this is a confusing area of the law as shown by the fact that there was recently an article in the paper showing that the producers of a "Girls Gone Wild" video were in trouble for similar transgressions.

The truth is that the defendant was facing a terrible decision in October 2005. With the help of his retained attorney, he negotiated and ultimately signed a plea agreement capping his exposure at 30 years of incarceration. He did absolutely nothing for over six months to complain about his attorney or to suggest that he did not understand what he was

doing.  Then, when he got the draft of the presentence report, the defendant suddenly saw that the probation office was not buying his claims of marginal culpability.

As noted in this court's earlier report and recommendation, the defendant's claims herein are at odds with his testimony given under oath at the guilty plea hearing.  At that hearing, the defendant unequivocally testified that no one had attempted to force, threaten, pressure, or coerce him into pleading guilty.  He stated that the only promises made to him were those made in the plea agreement.  He said that he was fully satisfied with Mr. Mollman's representation.  As noted above, the defendant was fully aware that he was facing between 15 and 30 years in prison and that it was ultimately up to the judge to determine his sentence.  The process of preparing a presentence report was explained to him as was the significance of his sentencing guideline stipulations.  He testified under oath that his decision to plead guilty was a voluntary decision.  Toward the end of the hearing, the prosecutor noted that the defendant had filed at least one pretrial motion and the court made it very clear that it would never be considered if the defendant pleaded guilty.  Finally, at the hearing, Mr. Mollman also made it very clear about the extensive discussions he had with the defendant in preparation for the guilty plea and the difficult decision that the defendant faced.

The standards for withdrawing a guilty plea are set forth in this court's earlier Report and Recommendation.  Pursuant to those standards,

IT IS RECOMMENDED, unless any party files objections to the Report and Recommendation on or before August 11, 2006, that the defendant's motion to withdraw his guilty plea (docket number 44) be denied.

August 4, 2006.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT